# IN THE U.S. DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **Tony Dominguez** | * | |
| *On behalf of himself and others similarly situated* | * | |
| | * | |
| **Plaintiffs** | | |
| | * | |
| v. | | Case No. CBD 18-534 |
| | * | |
| **Microfit Auto Parts, Inc., et al** | | |
| | * | |
| **Defendants.** | | |

# JOINT MOTION FOR APPROVAL OF
# FLSA SETTLEMENT AGREEMENT

## I. Introduction

Plaintiffs, Tony Dominguez ("Dominguez"), Kevin Cabrera ("Cabrera"), Milton Fuentes ("Fuentes"), Areberth Gonzales ("Gonzales"), Asdruval Hernandez ("A. Hernandez"), Maximo Hernandez ("M. Hernandez"), Jose Munoz ("Munoz"), Edwin Ochoa ("Ochoa"), Kunauth "Anthony" Persaud ("Persaud"), and Gerardo Ventura ("Ventura") (collectively referred to as "Plaintiffs"), together with Microfit Auto Parts, Inc ("Microfit Auto Parts"), Inder S. Bian ("I. Bian"), and Kamaljit K. Bian ("K. Bian") (collectively referred to as "Defendants"), jointly move this Court for an Order granting an approval of a Settlement Agreement reached in this Fair Labor Standards Act ("FLSA") action.[1]

---

[1] Plaintiffs also brought supplemental claims under the Maryland Wage/Hour Law, Md. Ann. Code § 3-401 et seq. ("MWHL"), and the Maryland Wage Payment and Collection Law, Md. Ann. Code § 3-501 et seq. ("MWPCL"). There is a requirement that FLSA settlements be supervised by the Court or by the U.S. Department of Labor. However, there is no corresponding requirement that settlements for MWHL or MWPCL claims be judicially approved. Therefore, the focus on this Motion is on the FLSA claims brought by the Plaintiffs.

## II.     Standard of Review

Generally speaking, "[u]nder the FLSA, 'there is a judicial prohibition against the unsupervised waiver or settlement of claims.'" *Kianpour v. Restaurant Zon, Inc., et al.*, DKC 11-0802, 2011 WL 5375082, *2 (D. Md. Nov. 4, 2011) (*quoting Taylor v. Progress Energy, Inc.*, 493 F.3d 454, 460 (4th Cir. 2007)). "Nevertheless, '[c]laims for FLSA violations can ... be settled when the settlement is supervised by the [Department of Labor] or a court.'" Id. (*quoting Taylor*, 415 F.3d at 374 (alterations in original); *see also Gionfriddo et al. v. Jason Zink, LLC, et al.*, RDB 09-1733, 2011 WL 2791136, *2 (D. Md. July 15, 2011) ("Settlement agreements that resolve claims pursuant to the FLSA must receive court approval."). In general, Courts review FLSA settlements to ensure a fair and reasonable resolution of a bona fide dispute. *Duprey v. Scotts Co. LLC,* No. PWG-13-3496, 2014 WL 2174751, at *2 (D. Md. May 23, 2014).

Although the Fourth Circuit has not directly addressed the factors to be considered in approving FLSA settlements, "district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit" in *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). *Saman v. LBDP, Inc.*, No. DKC–12–1083, 2013 WL 2949047, at *3 (D. Md. June 13, 2013) (citing *Hoffman v. First Student, Inc.*, No. WDQ–06–1882, 2010 WL 1176641, at *2 (D. Md. Mar. 23, 2010); *Lopez v. NTI, LLC,* 748 F.Supp.2d 471, 478 (D. Md. 2010)); *Simpson v. Pure Technologies U.S., Inc.*, 2018 WL 1851467 at * 2 (D. Md. Apr. 18, 2018). The settlement must 'reflect[ ] a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions,' which includes a finding with regard to (1) whether there are FLSA issues actually in dispute, (2) the fairness and reasonableness of the settlement in light of the relevant factors from Rule 23, and (3) the reasonableness of the attorneys' fees, if included in the agreement." *Duprey*, 2014 WL 2174751 at *2 (*citing Saman*, 2013 WL 2949047 at *3). *See also Lomascolo v. Parsons*

*Brinckerhoff, Inc.*, No. 08–1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009); *Lane v. Ko–Me, LLC*, No. DKC–10–2261, 2011 WL 3880427, at *2–3 (D. Md. Aug. 31, 2011)). "These factors are most likely to be satisfied where there is an 'assurance of an adversarial context' and the employee is 'represented by an attorney who can protect [his] rights under the statute.' " *Duprey* at *2 (*citing Lynn's Food Stores*, 679 F.2d at 1354).

Additionally, "where a proposed settlement of FLSA claims includes a provision regarding attorneys' fees, the reasonableness of the award must also 'be independently assessed, regardless of whether there is any suggestion that a conflict of interest taints the amount the wronged employee recovers under a settlement agreement.'" *Saman*, 2013 WL 2949047, at *3 (quoting *Lane*, 2011 WL 3880427, at *3); *see also Kianpour*, 2011 WL 5375082, at *3. "In making that assessment, courts typically 'use the principles of the traditional lodestar method as a guide.'" *Lane*, 2011 WL 3880427, at *3 (citation omitted). The lodestar amount is "defined as a reasonable hourly rate multiplied by hours reasonably expended." *Riveros v. WWK Construction, Inc.*, No. PJM 15-193, 2015 WL 5897749, at *4 (D. Md. Oct. 5, 2015) (citation omitted).

### III. Procedural and Factual Background

Within three years preceding the filing of this lawsuit, the Plaintiffs allege that they worked for Microfit Auto Parts as auto part delivery drivers. Defendants admit that the Plaintiffs worked for Microfit Auto Parts during the applicable period but deny that they were all employed as delivery drivers. Microfit Auto Parts is a business that sells and delivers automobile parts throughout the District of Columbia, Maryland, and Virginia region.

Plaintiffs, who were paid a flat weekly amount and earned a monthly commission based on the value of goods sold, allege they were not paid minimum wages or overtime wages in the

proper amounts by Defendants. Plaintiffs also allege that they often worked more hours than they were officially scheduled to work, would often work in excess of forty (40) hours a week, and that these additional hours and overtime were not reflected by any increases in their weekly wages. Plaintiffs further allege that they were not paid the full value of their commissions, and that they were subject to deductions for events outside of their control that further decreased their wages.

Defendants expressly deny the Plaintiffs' claims or that any amounts of regular wages or overtime wages or commissions are owed to either of the Plaintiffs. Defendants assert that the Plaintiffs' were properly paid in accordance all applicable state, federal and local laws.

After filing an Answer to this lawsuit, Plaintiffs served Defendants with written discovery. Defendants produced to Plaintiffs thousands of pages of relevant documents. Defendants' production included available work and hour records, GPS records, and delivery records.

Using these documents, as well as Plaintiffs' own recollections about hours worked, deductions suffered, and missing payments, Plaintiffs, through their counsel, were able to roughly calculate what they allege to be two sets of damages for each of the Plaintiffs, which are attached as Exh. 1. One set of calculations were done on the assumption that Plaintiffs' hours were exactly as scheduled (referred to here as "stated hours"), while the second set of calculations factored in Plaintiffs' own recollections about additional hours they worked beyond the stated hours (referred to here as "estimated hours").

Based upon Plaintiffs' interpretation of the records produced and the law, the Plaintiffs alleged potential damages calculations show the following:

    a.    Tony Dominguez was owed $2,307.00 based on the stated work hours or $2,963.75 based on the estimated work hours. (Exh. 2; pg. 4).

    b.    Kevin Cabrera was owed $6,413.92 based on stated work hours or $10,951.59 based on estimated work hours. (Exh. 2; pg. 3).

    c.    Milton Fuentes was owed $2,144.84 based on stated work hours or $4,520.67 based on estimated work hours. (Exh. 2; pg. 5).

    d.    Areberth Gonzales was owed $774.38 based on stated work hours or $2,309.32 based on estimated work hours. (Exh. 2; pg. 6).

    e.    Asdruval Hernandez was owed $585.85 based on stated work hours (there were no additional work hours estimated for Asdruval Hernandez). (Exh. 2; pg. 7).

    f.    Maximo Hernandez was owed $17,994.43 based on stated work hours or $28,950.39 based on estimated work hours. (Exh. 2; pg. 10).

    g.    Jose Munoz was owed $11,334.22 based on stated work hours or $24,202.71 based on estimated work hours. (Exh. 2; pg. 12).

    h.    Edwin Ochoa was owed $2,082.65 based on stated work hours or $3,661.09 based on estimated work hours. (Exh. 2; pg. 13).

    i.    Kunauth "Anthony" Persaud was owed $10,178.75 based on stated work hours or $17,802.07 based on estimated work hours. (Exh. 2; pg. 16).

    j.    Gerardo Ventura was owed $5,280.84 based on stated work hours or $7,758.53 based on estimated work hours. (Exh. 2; pg. 18).

Defendants dispute all liability and do not admit that the stated work hours or the estimated work hours are accurate. Defendants assert that the GPS records provided to the Plaintiffs show that the Plaintiffs worked significantly fewer hours than either the state work

hours or the estimated work hours. Plaintiffs deny Defendants claims and assert that their calculations are accurate, thereby demonstrating a clear bona fide dispute regarding the hours that Plaintiffs worked.

The Parties engaged in mediation conducted by the Honorable Judge Jillyn K. Schulze on November 15, 2018 where both Parties exchanged their respective positions, the details of which are confidential. Suffice to say, after exchanging their respective positions, both parties agreed there existed the potential for a bona-fide dispute, in part, because of the GPS records and disputes over the amounts paid to Plaintiffs. Ultimately, no resolution was reached at that mediation.

On December 7, 2018, Defendants mailed to each Plaintiff Offers of Judgment representing approximately two-times (2.0x) their damages based on stated hours worked. Plaintiffs' counsel advised Plaintiffs on the benefits and dangers of accepting or rejecting the Offers of Judgment. Two Plaintiffs (Gonzales and A. Hernandez) – the two with the lowest recoveries due to their short periods of employment – were prepared and ultimately did accept the offers. (ECF No. 31 & 32). The remaining Plaintiffs sought greater recoveries and/or sought to resolve all of their claims pursuant to a settlement agreement (this settlement agreement has the virtue of avoiding the litigation of fees and costs before the Court).

The Offers of Judgment, though mostly rejected, did result in a new round of negotiations between the parties which culminated in a resolution for an additional $10,750.00 on top of the amount offered in the Offers of Judgment. In total, the amount the Defendants have agreed to pay Plaintiffs is a total of $128,122.49, to be divided as described below.[2]

---

[2] It is anticipated that the two Plaintiffs for whom the Offers of Judgment were accepted will withdraw their acceptances; the amount offered in the Offer of Judgment will be included in the settlement amount, and they will be paid accordingly.

After agreeing to a mutually acceptable settlement amount to be paid to the Plaintiffs, the Parties then negotiated a resolution on attorneys' fees and costs, with Defendants agreeing to pay $55,000 in attorneys' fees and costs, inclusive of work that will be done by Plaintiffs' counsel, including the preparation of these settlement documents and motions.[3] *See* Exh. 3. No Plaintiff will be charged any fee or subject to any deduction from their recovery for any fees and costs.

Plaintiffs, by counsel, have been fully advised of the benefits and risks of the settlement, and they desire to enter into the settlement agreement. In addition, a possibility exists that Plaintiffs may lose this case at the summary judgment stage or at trial. Furthermore, this settlement enables all parties to avoid the unnecessary accumulation of litigation costs and attorneys' fees, and furthers the interests of both sides. The parties' settlement preserves scarce judicial resources and the settlement is the product of good-faith bargaining between the parties, with advice of experienced legal counsel.

## IV.     Settlement Amount Per Plaintiff and Explanation for Amount

The subdivision of the total settlement amount for each of the individual Plaintiffs, and the explanation for the divisions follows (*see also* Exh. 2)[4]:

a. Tony Dominguez: Tony Dominguez will recover a settlement amount of $8,016.75. He is the lead Plaintiff in this lawsuit and has played an instrumental role in its inception. Dominguez, unlike most of the other Plaintiffs, claims that he was never paid his final commission. This loss was compounded by the fact that Dominguez claims that he had the route of the most successful salesman, meaning that his

---

[3] At the time Plaintiffs' counsels' attorneys' fees and costs were settled upon, the attorneys' fees and costs were at approximately $64,000.

[4] These calculations were prepared by counsel on behalf of the Plaintiffs. In agreeing to settle this case, the Defendants do not admit to liability and do not join in the damage presentation included in this Motion.

commission payments would have been especially high. Dominguez was the catalyst for the initiation of this collective action, and he assisted in identifying potential workers to participate in the case. The settlement amount here represents Dominguez's treble damages based on stated hours worked and is intended to compensate him both for alleged unpaid wages, as well as the unique circumstances of his employment and role in this case. Defendants' deny that Dominguez is owed any wages of any kind, including but not limited unpaid commissions and overtime. Defendants have agreed to pay the amount stated in an effort to resolve this dispute and without admission of liability.

b. Kevin Cabrera: Kevin Cabrera will recover a settlement amount of $13,750.00. Cabrera maintains that the wage payment records were inaccurate and/or incomplete. When calculating Cabrera's claimed damages, wage payments were assumed by Cabrera to have been made to him in an amount favorable to Defendants. However, Cabrera believes that he is owed a sizeable amount more than the calculations demonstrate. Cabrera also alleges that he was subject to regular deductions for each pay period – something he claims that not all other Plaintiffs suffered. Additionally, Cabrera alleges he was never paid his final paycheck. The settlement amount here represents the amount offered to him in the Offer of Judgment with an additional increase to compensate him for the unique circumstances of his employment and the alleged lack of wage payment documents which adversely impacted his recovery. Defendants' deny that Cabrera is owed any wages of any kind, including but not limited unpaid commissions and overtime. Defendants further assert that accurate records were provided and that no improper deductions were made from Cabrera's

wages. Defendants have agreed to pay the amount stated in an effort to resolve this dispute and without admission of liability.

c. Milton Fuentes: Milton Fuentes will recover a settlement amount of $4,288.99. Although he did not have as long a period of employment with the Defendants as some of the other Plaintiffs, he alleges he was subjected to a deduction of $700.00. The settlement amount here represents the amount offered in the Offer of Judgment with an additional small increase to compensate for the penalty that Fuentes alleged he suffered. Defendants' deny that Fuentes is owed any wages of any kind, including but not limited unpaid commissions and overtime. Defendants further assert that no improper deductions were made from Fuentes' wages. Defendants have agreed to pay the amount stated in an effort to resolve this dispute and without admission of liability.

d. Areberth Gonzales: Areberth Gonzales will recover a settlement amount of $1,548.76, which is his stated damages. Defendants' deny that Areberth Gonzales is owed any wages of any kind, including but not limited unpaid commissions and overtime. Defendants have agreed to pay the amount stated in an effort to resolve this dispute and without admission of liability.

e. Asdruval Hernandez: Asdruval Hernandez will recover a settlement amount of $1,171.70, which is his stated damages. Defendants' deny that he is owed any wages of any kind, including but not limited unpaid commissions and overtime. Defendants have agreed to pay the amount stated in an effort to resolve this dispute and without admission of liability.

f. Maximo Hernandez: Maximo Hernandez will recover a settlement amount of $36,493.53. He had one of the longest periods of employment with the Defendants.

Plaintiff M. Hernandez claims he was subject to a greater number of deductions for things ranging from the delivery of incorrect parts to bounced checks. He also estimates that his shifts ended later than most other Plaintiffs. The settlement amount here represents the amount offered in the Offer of Judgment with an additional increase to compensate for the alleged greater number of deductions suffered, and his longer hours. Defendants' deny that M. Hernandez is owed any wages of any kind, including but not limited unpaid commissions and overtime. Defendants further assert that no improper deductions were made from his wages. Defendants have agreed to pay the amount stated in an effort to resolve this dispute and without admission of liability.

g. Jose Munoz: Jose Munoz will recover a settlement amount of $25,000.00. He had one of the longer periods of employment with the Defendants, and alleged that he was subjected to extensive deductions, which totaled approximately $1,300.00. Additionally, Munoz was one of the few Plaintiffs for which Plaintiffs claim that *no or minimal* wage payment documents were provided, and as such, when calculating his damages, wage payments were assumed to have been made to him in an amount favorable to Defendants. Munoz thus believes that he is owed a sizeable amount more than the calculations demonstrate. The settlement amount here represents the amount offered in the Offer of Judgment with an additional increase to compensate for the deductions he alleges he suffered, the unique circumstances of his employment, and the alleged lack of wage payment documents which adversely impacted his recovery. Defendants' deny that Munoz is owed any wages of any kind, including but not limited unpaid commissions and overtime. Defendants further assert that no improper

deductions were made from Munoz's wages. Defendants have agreed to pay the amount stated in an effort to resolve this dispute and without admission of liability.

h. Edwin Ochoa: Edwin Ochoa will recover a settlement amount of $6,500.00. Ochoa claims that the amount offered to him in the Offer of Judgment was considerably lower than it should have been; Defendants' offers to all Plaintiffs was set to two-times (2.0x) the damages based on stated hours worked as calculated by Plaintiffs. After the Offers of Judgment were made, Plaintiffs' counsel realized an alleged mistake had been made in the calculations, which had failed to factor in weekends Ochoa claims to have worked. As a result, had Ochoa's calculations been accurate accordingly to his analysis when Defendants reviewed them, his two-times damages would have been higher, meaning his Offer of Judgment may have been higher. Additionally, Ochoa claims that Defendants' production for Ochoa was missing a large number of wage payment documents, and as such, when calculating his damages, wage payments were assumed to have been made to him in an amount favorable to Defendants. The settlement amount here represents the amount offered in the Offer of Judgment with an additional increase to compensate for the alleged calculation error (which may have set the Offer of Judgment considerably higher) as well as the purported missing wage payment documents which adversely impacted his recovery. Defendants' deny that Ochoa is owed any wages of any kind, including but not limited unpaid commissions and overtime. Defendants have agreed to pay the amount stated in an effort to resolve this dispute and without admission of liability.

i. Kunauth "Anthony" Persaud: Anthony Persaud will recover a settlement amount of $20,642.97. He had one of the longer periods of employment with Defendants and,

as a result, alleged he was subject to significant deductions over time, which totaled approximately $3,000.00. Additionally, Persaud claims that there are significant gaps in his wage payment document history, particularly for the earlier years he worked. As such, when calculating his damages, wage payments were assumed to have been made to him in an amount favorable to Defendants. The settlement amount here represents the amount offered in the Offer of Judgment with an additional amount to compensate for the alleged deductions he allegedly suffered as well as the alleged gaps in his wage payment documents. Defendants' deny that Persaud is owed any wages of any kind, including but not limited unpaid commissions and overtime. Defendants further assert that accurate records were provided and that no improper deductions were made from Persaud's wages. Defendants have agreed to pay the amount stated in an effort to resolve this dispute and without admission of liability.

j. Gerardo Ventura: Gerardo Ventura will recover a settlement amount of $10,709.79. He had one of the longer periods of employment with Defendants' and, as a result, claims that he was subject to semi-regular deductions over time. The settlement amount here represents the amount offered in the Offer of Judgment with an additional amount to compensate for the unique circumstances of his employment. Defendants' deny that Ventura is owed any wages of any kind, including but not limited unpaid commissions and overtime. Defendants further assert that no improper deductions were made from Ventura's wages. Defendants have agreed to pay the amount stated in an effort to resolve this dispute and without admission of liability.

Pursuant to the three-part test set out in *Duprey*, this case contains FLSA issues actually in dispute. The parties have identified the following three areas they believe would have raised

significant disputes in this case:

    a.    *Time Records*:  Defendants produced time records for the Plaintiffs.  Plaintiffs contended that those time records were inaccurate and that they worked hours in excess of what was recorded.  Defendants contend their time records are accurate, but in any case, believe their GPS Records would largely corroborate their time records.

    b.    *GPS Records*:  Defendants claimed that produced GPS records would show when Plaintiffs were and were not driving.  Plaintiffs, on the other hand called into question the accuracy of the GPS records because drivers changed vehicles regularly, and moreover, because Plaintiffs claimed they performed work even after returning to the warehouse and the vehicles were parked.  This issue is particularly significant because Defendants time records were not produced from a time clock machine but were formulated in non-standardized spreadsheets that were heavily notated in pen.  Because Plaintiffs called into question the accuracy of the time records, the GPS records would have played an important role in determining any divergencies from the time records themselves.  The evidentiary admissibility of these records would have also been disputed and would likely not have been decided until a motion in limine prior to trial, at the earliest.

    c.    *Delivery Records:*    Defendants produced delivery records showing parts that were delivered on a particular day and their value.  Plaintiffs raise into question the accuracy of the delivery records, particularly because the Plaintiffs themselves were responsible for not only delivering the parts, but often times collecting the money for the sales.  Plaintiffs allege that the value of the parts they delivered were in excess of the amount represented in the delivery records.  The delivery records also show parts that were not delivered or returned, which Plaintiffs' claim factors in with Plaintiffs allegations that they were sometimes penalized for these events.

Defendants assert that the records are accurate.

The amount of damages owed, if any, would have greatly varied depending upon the resolution of these issues by a jury. Plaintiffs' claim that there were no documents that concretely established the number of hours alleged by the Plaintiffs, whereas Defendants maintained their GPS records would show that Plaintiffs did not work excess hours. Plaintiffs were also prepared to challenge the admissibility of the GPS records, and questioned how they could be correctly attributable to each of the Plaintiffs, whereas Defendants maintained their GPS records were accurate and could be attributed to Plaintiffs based on cross-references to delivery records. Plaintiffs on the other hand believed that certain documents which had not yet been produced by Defendants would allow them to overcome the GPS records.

These complex legal and factual issues could result in significantly varied recoveries depending on which facts the jury ultimately believed. For example, if the jury decided that Defendants violated the FLSA the jury could award an amount significantly less than the Plaintiffs' stated amounts if the Defendants' position with regard to the accuracy of the records prevails. If the jury were to believe that the Plaintiffs worked the stated hours calculated by the Plaintiffs, damage awards for all ten Plaintiffs could be as low as $59,112.12, plus the potential for statutory penalties. If the jury, however, believed that Plaintiffs worked beyond their stated hours, the range of damages in total would be $103,162.62, plus the potential for statutory penalties.

Due to this greatly varied range of recoveries, the associated potential exposure, and to avoid the costs and inherent delays in litigation, the Parties have mutually agreed to settle the case. The current settlement of $128,122.49 contemplates the payment of monies to the Plaintiffs in amounts materially greater than the liquidated damages alleged by Plaintiffs under a stated

work hours calculation, and is also materially greater than the base damages alleged by Plaintiffs under an estimated work hours calculation. In this case, the Plaintiffs are recovering what they allege are owed to them (whether it is under estimated or stated hours worked), along with a substantial amount of money alleged as liquidated damage. The calculations of Plaintiffs' damages were performed in an adversarial context. Accordingly, there is evidence of the reasonableness of this settlement, which has been negotiated at arms-length.

## V.   Continuing Jurisdiction

The parties have agreed to request that the Court maintain continuing jurisdiction over this case to supervise the settlement payments. This provision fulfills the Court's proper supervisory role in assuring that no FLSA case is dismissed absent fair and reasonable wage payment to plaintiff workers. The parties bring to the Court the following paragraph set forth in the Settlement Agreement:

> **15.   CONTINUING JURISDICTION.** The Parties agree, and the Court by its approval of this Agreement agrees, that the Court shall have continuing jurisdiction to enforce the terms of this Agreement, resolve any disputes arising out of the Agreement, and supervise all payments by the Defendants of all consideration to the Plaintiffs and Plaintiffs' counsel. Within fifteen (15) days after the last payment made to Plaintiffs and Plaintiffs' counsel by Defendants, the Parties agree to file a Notice of Stipulated Dismissal with the Court, dismissing this Lawsuit against the Defendants with prejudice. The Parties further agree to execute and/or have executed by their respective counsel, any such additional documents as may be reasonably necessary to effectuate the dismissal with prejudice of this Lawsuit against the Defendants.

By approving this Settlement Agreement, the Court is agreeing to maintain continuing jurisdiction over this case, and once final payment is made, counsel will so notify the Court and the case shall be dismissed with prejudice. (Appropriate language is set forth in the proposed Order attached hereto to this Motion).

## VI.   Negotiated Attorneys' Fees and Costs

Under the Settlement Agreement, Plaintiffs' counsel would receive $55,000.00 for

Attorneys' Fees and Costs incurred. *See* Exh. 3. Both parties submit that attorneys' fees and costs were negotiated separately and only after a resolution was reached with respect to the Plaintiffs' settlement outcomes. Given the full and uncompromised relief to the Plaintiffs as to their respective minimum wage and overtime claims based on "stated hours" of operation, and the fact that fees and costs were negotiated separately and secondarily to the Plaintiffs' personal outcome, judicial scrutiny of the amount of fees and costs to be paid is likewise not necessary.[5]

Nevertheless, to the extent that the Court desires to carefully review the proposed fee and cost award for reasonableness, Plaintiffs' counsel submit Declarations together with a detailed billing statement. *See* Exh. 3 (Counsel Affidavits and Fee Records). As detailed in the billing statement submitted by Hoffman Employment Law, LLC, Howard Hoffman, Esq. claims an hourly rate of $400.00,[6] and has worked 64 hours. *See* Exh. 3 A. Jordan S. Liew, Esq. claims an hourly rate of $205.00, and has worked 234.8 hours. *See* Exh. 3-A; Exh. 4. Gregory B. Herbers, Esq. claims an hourly rate of $205.00, and has worked 3.2 hours. *See* Exh. 3-A; Exh. 5.

In addition to the above, costs in this case amount to a total of $1,756.60. *See* Exh. 3 A. As such, the total amount of attorneys' fees and expenses incurred by Plaintiffs' counsel in this

---

[5] If a motion demonstrates that a proposed fee award was agreed upon separately and without regard to the amount paid to the Plaintiffs, then unless there is reason to believe that the Plaintiff's recovery was somehow adversely affected by the amount of fees to be paid to the attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to Plaintiffs' counsel. *Kianpour*, 2011 WL 5375082 at *3 (citation omitted) (quotation omitted); see also *Phelps v. Detail USA, Inc.*, 2012 WL 254113, at *2 (M.D. Fla. Jan. 19, 2012) ("[W]hen attorney's fees are negotiated separately from payment to plaintiff(s), 'an in depth analysis [of the reasonableness of the fees] is not necessary unless the unreasonableness is apparent from the face of the documents.'") (citation omitted).

[6] Mr. Hoffman has over 19 years of relevant legal experience. The requested hourly rate – $400 an hour – fall within the range specified by Appendix B of the Local Rules for the United States District Court for the District of Maryland and was awarded to Hoffman in *Jackson et al. v. Egira, LLC, et al.*, RDB 14-3114, 2016 WL 5815850 (D. Md. Oct. 5, 2016), where the Court overruled objections to the claimed hourly rate of $400. Specifically, L.R. Appendix B provides that an attorney who has been admitted to the bar between fifteen and nineteen years may reasonably charge an hourly rate between $275 and $425. Jordan S. Liew and Gregory B. Herbers, both younger yet accomplished lawyers, have an hourly rate of $205/hour, which is well within range provided by L.R. Appendix B for similar lawyers ($150-$225).

litigation as of January 24, 2019 is approximately $75,700.60 ($73,944.00 in fees and $1,756.60 in expenses). (This will increase as counsel has continuing obligations in this case, including the drafting of these settlement documents and motions, even if this Settlement Agreement is approved). In light of these figures, the amount of attorneys' fees and costs that Plaintiff's counsel would receive under the Agreement is reasonable under the lodestar evaluation, and in fact represents a substantial reduction and compromise in the amount of attorneys' fees and costs claimed by counsel (a discount of $20,700.06 to be precise).

## VII. Conclusion

Wherefore, the parties request that this Court approve the proposed Settlement Agreement as a fair and reasonable resolution of the parties' FLSA dispute and approve and issue the proposed Order implementing the terms of the Settlement Agreement.

Respectfully submitted,

_____/s/_____
Howard B. Hoffman, Esq. #25965
Jordan S. Liew, Esq. #20509
Hoffman Employment Law, LLC
600 Jefferson Plaza, Ste. 204
Rockville, Maryland 20852
301-251-3752
301-251-3753 (fax)
hhoffman@hoholaw.com
jliew@hoholaw.com

*Attorneys for Plaintiffs*

_____/s/_____
Charles H. Henderson, Esq. # 16139
Clifford B. Glover III, Esq. # 19693
McNamee Hosea
6411 Ivy Lane, Ste. 200
Greenbelt, Maryland 20770
301-441-2420
301-982-9450 (fax)
chenderson@MHLawyers.com

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of January 2019, a copy of the foregoing Joint Motion for Approval of FLSA Settlement Agreement, along with all Exhibits and other attachments, was filed via the Electronic Case Filing System (ECF) maintained by the U.S. District Court for the District of Maryland, and is available for viewing and downloading from the ECF system.

/s/
Jordan S. Liew