# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
## Southern Division

| | |
|---|---|
| TONY DOMINGUEZ, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No. CBD-18-0534 |
| MICROFIT AUTO PARTS, INC., *et al.*, | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

Plaintiffs Tony Dominguez, Kevin Cabrera, Milton Fuentes, Areberth Gonzales, Asdruval Hernandez ("A. Hernandez"), Maximo Hernandez ("M. Hernandez"), Jose Munoz, Edwin Ochoa, Kunauth "Anthony" Persaud, and Gerardo Ventura (collectively "Plaintiffs") along with Defendants Microfit Auto Parts, Inc., Inder S. Bian ("I. Bian"), and Kamaljit K. Bian ("K. Bian") (collectively "Defendants") have submitted a joint motion for approval of their proposed settlement agreement ("Settlement Agreement"). Joint Motion for Approval of Settlement Agreement ("Joint Motion"), ECF No. 36. Currently, both parties have agreed that Defendants will pay a total sum of $128,122.49 to be divided as follows: Plaintiff Dominguez would receive $8,016.75 in compensation for his claims; Plaintiff Cabrera would receive $13,750.00 in compensation for his claims; Plaintiff Fuentes would receive $4,288.99 in compensation for his claims; Plaintiff Gonzales would receive $1,548.76 in compensation for his claims; Plaintiff A. Hernandez would receive $1,171.70 in compensation for his claims; Plaintiff M. Hernandez would receive $36,493.53 in compensation for his claims; Plaintiff Munoz would receive $25,000.00 in compensation for his claims; Plaintiff Ochoa would receive $6,500.00 in

1

compensation for his claims; Plaintiff Persaud would receive $20,642.97 in compensation for his claims; Plaintiff Ventura would receive $10,709.79 in compensation for his claims. Parties also agreed that Defendants would pay Plaintiffs' counsel $55,000.00 in total as reimbursement for attorneys' fees and costs incurred throughout these proceedings.

The Court has reviewed the Joint Motion, the accompanying memorandum, and the applicable law. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the reasons that follow, the Court hereby **GRANTS** the parties' Joint Motion without modification as: (1) there exists a *bona fide* dispute; (2) the settlement agreement is both fair and reasonable under the *Saman* test; and, (3) the attorneys' fees agreed to appear to be not only reasonable under *Saman* but also represent a significant reduction from what Plaintiffs' counsel incurred while prosecuting this case. A separate Order shall issue.

**I.     Analysis**

  **A. A *Bona Fide* Dispute Exists**

Congress enacted the FLSA to protect workers from poor wages and long hours, which are often the result of power imbalances between workers and employers. *Saman v. LBDP, Inc.*, No. Civ. A. DKC-12-1083, 2013 WL 2949047, at *2 (D. Md. June 13, 2013). Even when parties submit a joint motion seeking approval for a settlement agreement, the Court must undertake a multi-step review of the agreement and any attorney's fees requested to ensure its reasonableness. *Id.* "[A]s a first step, the *bona fides* of the parties' dispute must be examined to determine if there are FLSA issues that are 'actually in dispute.'" *Id.* at *3 (citing *Lane v. Ko–Me, LLC*, Civ. A. No. DKC–10–2261, 2011 WL 3880427, at *2 (D. Md. Aug. 31, 2011) (citation omitted)).

A bona fide dispute exists in this case. Plaintiffs commenced this proceeding on February 22, 2018. Pls.' Compl. ECF No. 1. Plaintiffs were employees of Microfit Auto Parts, a company that Defendants owned and operated. Pls.' Compl. ¶¶ 6-9. Microfit Auto Parts "sells and delivers automobile parts throughout the District of Columbia, Maryland, and Virginia region." J. Mot. 3. Plaintiffs worked for various lengths of time as "auto part delivery drivers," a role that required them to not only deliver but to also collect payment at times. J. Mot. 3, 13. During their employment, Plaintiffs allege that Defendants did not pay them minimum wage or overtime. J. Mot. 3-4. Specifically, Plaintiffs allege they were paid a flat weekly rate along with the promise of "a commission of 1% of the value of goods delivered by [Plaintiffs] over the course of a month." Pls.' Compl. ¶¶ 17, 21. However, Plaintiffs alleged they frequently worked more than 40 hours a week and were unable take breaks. Pls.' Compl. ¶ 19. Plaintiffs further alleged that Defendants failed to pay them the promised commission. Pls.' Compl. ¶ 22. Defendants denied all liability in their response to the complaint. Defs.' Answer, ECF No. 7. Defendants asserted that their own time records were accurate and, in any event, that their GPS records supported their understanding of how many hours Plaintiffs actually worked. J. Mot. 5-6, 13-14. Defendants made no admissions of liability with this Settlement Agreement. J. Mot. 5. The Joint Motion also highlights specific areas of the case about which the parties disagree. See J. Mot. 13 (enumerating three "significant disputes in this case" as the accuracy of time records, GPS records, and delivery records). Accordingly, the parties were and remain at odds with one another in regard to Plaintiffs' compensation—or lack thereof—as employees of Defendants.

### B. The Settlement Agreement Passes the *Saman* Test

If a *bona fide* dispute exists, the next step in the analysis is to assess the fairness and reasonableness of a settlement agreement using the following factors:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of [ ] counsel ...; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.

*Saman*, 2013 WL 2949047, at *3 (quoting *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-cv-1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009)). Here, the settlement agreement appears to be fair and reasonable under the *Saman* factors.

### 1. Extent of discovery

According to the Joint Motion, a significant amount of discovery has been exchanged. J. Mot. 4. Specifically, Plaintiffs state they served Defendants with written discovery requests after Defendants filed their Answer. J. Mot. 4. Defendants responded by producing "thousands of pages of relevant documents." J. Mot. 4. These documents included "available work and hours records, GPS records and delivery records." J. Mot. 4. In fact, the bulk of what remains in dispute between the parties resulted from diverging interpretations of the information exchanged during this discovery process, including the reliability of the records. J. Mot. 5-6. While Plaintiffs "believe[] that certain documents . . . had not yet been produced by Defendants," discovery is significantly underway. J. Mot. 14.

### 2. Stage of the Proceedings

This settlement comes months after the case was filed with the Court. In the course of that time, the parties engaged in the exchange of a significant amount of discovery, formal mediation with Magistrate Judge Schulze, the exchange of offers of judgment, and what appears to have been continuous and vigorous negotiations. J. Mot. 4-7. While the matter settled before trial or even summary judgment motions were filed, it seems apparent that written discovery was nearly completed, although Plaintiffs still believe there are relevant documents in Defendants

4

possession. J. Mot. 14. While it is unclear the extent to which parties may have sought to conduct depositions, it is doubtful that they would have made much difference in bringing the matter to a resolution.

### 3. Absence of Fraud or Collusion

There is no evidence that the Settlement Agreement is the product of fraud or collusion. "There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Saman*, 2013 WL 2949047, at *5. Here, even with this settlement the parties remain staunchly divided on the facts of the situation. *See* J. Mot. 7-12 (listing the amount awarded to each Plaintiff, their position on their personal claim and Defendants' response contradicting their position). Further, "[b]oth parties submit that attorneys' fees and costs were negotiated separately and only after a resolution was reached with respect to the Plaintiffs' settlement outcomes." J. Mot. 16. Accordingly, no fraud or collusion appears present in this matter.

### 4. Experience of Counsel

Plaintiffs are represented by the law firm Hoffman Employment Law, LLC ("Hoffman Law"). In support of this motion, Plaintiffs' counsel provided declarations detailing their qualifications and experience. Specifically, Plaintiffs were represented by Howard B. Hoffman, the founding member of Hoffman Law and the primary counsel on this matter. Declaration of Howard B. Hoffman ("Hoffman Declaration") ¶¶ 1-2, ECF No. 36-3. Mr. Hoffman has approximately nineteen (19) years of experience as an attorney. Hoffman Decl. ¶¶ 2, 11. In his declaration, Mr. Hoffman details his "extensive experience prosecuting and defending wage and hour cases and other employment law cases." Hoffman Decl. ¶ 2. He included a list of nine "widely cited decisions" in wage and hour cases that he was involved in. Hoffman Decl. ¶ 10.

He also included citations to various First Amendment cases he prosecuted and news articles relating to his practice. Hoffman Decl. ¶¶ 11-12. Mr. Hoffman bills at $400.00 per hour and completed 64.0 hours of work on this matter. J. Mot. 16; Hoffman Decl. ¶ 4. The two other members of Plaintiffs' counsel were associates at Hoffman Law each with between three and four years of experience practicing law.[1] Given Mr. Hoffman's active participation in this matter and the extent of his experience—as supported by the citations to several cases brought in this District—Plaintiffs' counsel has sufficient experience in this area of law to competently represent Plaintiffs.

   5. **Opinions of Counsel**

Counsel for both parties agree that this settlement is in their clients' best interests. The Joint Motion discusses in detail the major areas that remain in dispute, mostly having to do with the accuracy and reliability of the records concerning Plaintiffs hours worked and whether they are admissible in court. J. Mot. 12-15. In counsels' opinion, the "complex legal and factual issues could result in significantly varied recoveries depending on which facts the jury ultimately believed." J. Mot. 14. With the settlement, there is resolution of the matter for Defendants and

---

[1] Plaintiffs were also represented by Jordon S. Liew, an associate at Hoffman Law who was admitted to the Maryland Bar in 2016. Declaration of Jordon S. Liew ("Liew Declaration"), ¶¶ 1-2, ECF No. 36-4. Prior to joining Hoffman Law, Mr. Liew worked as a fellow for the District of Columbia for one year and defended the government against various civil claims. Liew Decl. ¶ 2. Currently, he focuses "almost exclusively on employment law cases, primarily those concerning unpaid wage violations involving the FLSA and related state statutes." Liew Decl. ¶ 3. Mr. Liew bills for $205.00 per hour and completed 234.8 hours of work on this matter. J. Mot. 16; Liew Decl. ¶¶ 4, 6. The second associate on Plaintiffs' counsel was Gregory B. Herbers. Declaration of Gregory B. Herbers ("Herbers Declaration") ¶ 1, ECF No. 36-5. Mr. Herbers has approximately four (4) years of experience as an attorney and has focused on employment law and FLSA cases since he began at Hoffman Law. Herbers Decl. ¶3. Mr. Herbers bills at $205.00 per hour and completed 3.2 hours of work on this matter. J. Mot. 16; Herbers Decl. ¶ 3.

Plaintiffs recover "what they allege are owed to them . . . along with a substantial amount of money alleged as liquidated damages." J. Mot. 14-15.

### 6. Probability of Plaintiff's Success on the Merits and the Amount of the Settlement in Relation to the Potential Recovery

According to the Joint Motion, Plaintiffs' counsel anticipated recovering a maximum of approximately $103,705.97 in total, not including liquidated damages. J. Mot. 4-5. With this Settlement Agreement, each Plaintiff appears to be recovering at least as much as the maximum amount that Plaintiffs' counsel anticipated they would be entitled to recover, absent liquidated damages.[2] J. Mot. 4-5, 7-12. As discussed above, counsel for both parties note how the "complex legal and factual issues could result in significantly varied recoveries depending on which facts the jury ultimately believed." J. Mot. 14. Accordingly, Plaintiffs could have recovered significantly more at trial or significantly less. J. Mot. 14-15. The unpredictability of the outcome at trial makes settlement an ideal option for both parties. Further, in light of that unpredictability, the fact Plaintiffs are recovering the amount of damages that they are indicates this is the better option for Plaintiffs.

### C. Attorney's Fees

The final step in this inquiry is an independent assessment of the reasonableness of any attorney's fees that may be included in a settlement agreement. *Saman*, 2013 WL 2949047, at *3 (quoting *Lane,* 2011 WL 3880427, at *3). In the course of this independent assessment, the Fourth Circuit has instructed district courts to consider certain factors, including:

---

[2] The one exception being Plaintiff Fuentes, who is recovering $231.68 less than he claimed he was owed. J. Mot. 5, 9. While this amount of money might not be negligible to Plaintiff Fuentes, there is no indication that he was not sufficiently informed or otherwise prejudiced during these proceedings.

7

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* at *6–7 (citing *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)). When a claim for attorney's fees is filed in the federal court in Maryland, there is an extra layer of complexity arising from the Court's Local Rules which includes an entire appendix listing "Rules and Guidelines" for how parties are to request reimbursement of fees. Local Rules, App. B (D. Md. July 1, 2016).

Here, Plaintiffs' counsel seeks $55,000.00 as compensation for the attorneys' fees and costs incurred during this proceeding. J. Mot. 15. This represents reduction of the total amount of fees and costs incurred by counsel, which were $73,944.00 in attorneys' fees and $1,756.60 in costs. J. Mot. 16-17. Counsel makes particular note of the fact that the attorneys' fee award was "negotiated separately and only after a resolution was reached with respect to the Plaintiffs settlement outcomes." J. Mot. 16. Counsel asserts an argument that courts in the United States District Court for the Middle District of Florida apparently adopted:

> If a motion demonstrates that a proposed fee award was "agreed upon separately and without regard to the amount paid to the Plaintiffs, then unless . . . there is reason to believe that the Plaintiff's recovery was somehow adversely affected by the amount of fees to be paid to the attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to Plaintiffs' counsel."

*Kianpour v. Rest. Zone, Inc.*, No. Civ. A. DKC 11-0802, 2011 WL 5375082, at *3 (D. Md. Nov. 4, 2011) (citing *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009)).

8

While *Kianpour* is a case decided in this District, the Court therein did not actually adopt the Florida rule. In fact, the *Kianpour* decision cites to Section 216(b) of the FLSA as requiring a court to allow "reasonable" attorney's fees to be paid when a judgment has been entered. *Id.* Judge Chasanow goes on to reason that "[i]t would make little sense to require the amount of the fees awarded to be reasonable where the plaintiffs prevail on the merits, but to abandon that requirement altogether where the parties agree to settle the case." *Id.* Accordingly, a separate reasonableness assessment must be conducted.

While the Joint Motion does not explicitly address each of the *Saman* factors, the filing contains sufficient information to make an independent assessment possible. Those factors that appear to be significant to the determination of reasonableness in this case are addressed in detail below. The remaining factors—while the information exists in the filing—present no novel issues or significant impact on the reasonableness of the attorney's fees requested.[3] Ultimately, the requested amount of reimbursement of attorneys' fees is reasonable and accordingly this Settlement Agreement should be approved.

### 1. (1) The Time and Labor Expended

Plaintiffs' counsel has included supporting documentation with its request. Specifically, Plaintiffs' counsel included declarations from each of the three attorneys who worked on this matter that detail their qualifications and summarize the general work they completed for the case. Plaintiffs' counsel also included a detailed time log with a breakdown of the hours billed

---

[3] The *Saman* factors that are not addressed in detail in this memorandum are:

> (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; . . . (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; . . . (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client . . . .

and the tasks completed during that time. This time log does not comply with the Local Rules requiring that submissions supporting the hours billed are to be divided into general categories corresponding with various stages of litigation; Plaintiffs' counsel acknowledges as much. Hoffman Decl. ¶ 3; Liew Decl. ¶ 5; Herbers Decl. ¶ 5. However, as the amount requested was negotiated after Plaintiffs' awards were agreed to, both parties appear to be satisfied with the amount, and it represents a significant reduction in the total amount of fees incurred by Plaintiffs' counsel, this defect should not be fatal to the Joint Motion. Counsel should follow the Local Rules with future submissions or risk their motion being denied.

According to the Joint Motion, the total number of hours expended on the litigation was 302.0 with each attorney billing as follows: Howard Hoffman: 64.0 hours; Jordan S. Liew: 234.8 hours; and Gregory B. Herbers: 3.2 hours. J. Mot. 16. A review of the time expended upon the tasks listed appears to be reasonable, particularly considering the case involved ten (10) plaintiffs and a significant amount of data to be reviewed and analyzed in order to ascertain where the parties differed in terms of the number of hours for which Plaintiffs were not compensated.

### 2. (2) The Novelty and Difficulty of the Questions Raised

As discussed above, the Joint Motion details how the "complex legal and factual issues could result in significantly varied recoveries depending on which facts the jury ultimately believed." J. Mot. 14. While it is apparent there are significant factual disputes, the major legal issues appear to be admissibility in court and attribution of GPS records. Outside of that, this appears to be a typical wage and hour claim alleging an employer failed to properly compensate employees by using a flat rate with an additional opportunity to earn commission that did not actually occur. However, while this case may not have been novel, it was made more complex for a number of reasons. First, there are ten (10) named-plaintiffs in this matter. Each of these

individuals claims he was not paid minimum wage, overtime wages, commission and/or had wages reduced for other reasons. J. Mot. 7-12. The complexity of managing multiple clients at one time raises the difficulty of this case to above what is typically seen. Second, the amount of work this case involved was significant given the amount of data that was exchanged during discovery and the dispute over the accuracy of those records and the number of hours Plaintiffs claim to have worked. The volume of work necessary to sufficiently engage in this dispute is exemplified by the numerous charts submitted by counsel in which they calculated the various amounts of damages each Plaintiff might be entitled to recover. Damages Chart, attached as "Exhibit 2" to the J. Mot, ECF No. 36-2.

### 3. (5) The Customary Fee for Like Work

An additional factor considered by the Court is the customary fee attorneys charge for the type of work the attorney seeks to be reimbursed. For the convenience of counsel, the Local Rules include guidelines listing a presumptive range of reasonable hourly rates. *Gonzales v. Caron*, Civ. A. No. CBD-10-2188, 2001 WL 3886979, at *2 (D. Md. Sept. 2, 2011) ("[G]enerally this Court presumes that a rate is reasonable if it falls within these ranges.").

Plaintiffs' counsel is seeking to recover fees based on hourly rates that vary depending on their experience. J. Mot. 16. Plaintiffs argue these rates are within the market range for this kind of case. Hoffman Decl. ¶¶ 17-18. Although they did not supply affidavits or declarations from individuals outside of their firm who could attest to this fact, the rates requested are within the Guidelines in the Local Rules.[4]

---

[4] For Mr. Hoffman, Plaintiffs seek to recover a rate of $400.00 per hour. J. Mot. 16. With his nineteen (19) years of experience, this rate is well within the range listed in the Guidelines in the Local Rules for attorneys with between fifteen (15) to nineteen (19) years of experience. Local Rules, Appendix B(3)(d) (D. Md. July 1, 2016) (stating an attorney of this experience level bills between $275.00 to $425.00 per hour). This makes the requested rate presumptively reasonable.

11

## 4. (8) The Amount in Controversy and The Results Obtained

According to the Joint Motion, Plaintiffs' counsel anticipated recovering a maximum of approximately $103,705.97 total, not including liquidated damages. J. Mot. 4-5. With this settlement, both parties have agreed that Defendants will pay Plaintiffs a total sum of $128,122.49, which is just under $25,000.00 less than what Plaintiffs sought.[5] A review of the

---

*See Gonzales*, 2001 WL 3886979 at *2. Additionally, this rate is reasonable considering Mr. Hoffman's years of experience in wage and hour law.

For Mr. Liew, Plaintiffs seek to recover $205.00 per hour billed. J. Mot. 16. With his three (3) years of experience, these rates are well within the range listed in the Guidelines in the Local Rules for attorneys with less than five (5) years of experience. Local Rules, Appendix B(3)(a) (D. Md. July 1, 2016) (stating an attorney of this experience level bills between $150.00 to $225.00 per hour). This makes the requested rate presumptively reasonable. *See Gonzales*, 2001 WL 3886979 at *2. Additionally, this rate is reasonable considering Mr. Liew conducted the overwhelming majority of the work on the matter.

For Mr. Herbers, Plaintiffs seek to recover $205.00 per hour billed. J. Mot. 16. With his three (3) years of experience, these rates are well within the range listed in the Guidelines in the Local Rules for attorneys with less than five (5) years of experience. Local Rules, Appendix B(3)(a) (D. Md. July 1, 2016) (stating an attorney of this experience level bills between $150.00 to $225.00 per hour). This makes the requested rate presumptively reasonable. *See Gonzales*, 2001 WL 3886979 at *2. Additionally, this rate is reasonable considering Mr. Herbers conducted only a few hours of work on the matter and the amount of fees agreed to by counsel is a reduction in the total amount incurred.

[5] This amount will be divided as follows:

- Plaintiff Dominguez would receive $8,016.75 in compensation for his claims;
- Plaintiff Cabrera would receive $13,750.00 in compensation for his claims;
- Plaintiff Fuentes would receive $4,288.99 in compensation for his claims;
- Plaintiff Gonzales would receive $1,548.76 in compensation for his claims;
- Plaintiff A. Hernandez would receive $1,171.70 in compensation for his claims;
- Plaintiff M. Hernandez would receive $36,493.53 in compensation for his claims;
- Plaintiff Munoz would receive $25,000.00 in compensation for his claims;
- Plaintiff Ochoa would receive $6,500.00 in compensation for his claims;
- Plaintiff Persaud would receive $20,642.97 in compensation for his claims;
- Plaintiff Ventura would receive $10,709.79 in compensation for his claims.

claims reveals that each Plaintiff will recover at least as much as the maximum amount that Plaintiffs' counsel anticipated they would be entitled to recover absent liquidated damages.[6] J. Mot. 4-5, 7-12. As discussed above, the Joint Motion details how the "complex legal and factual issues could result in significantly varied recoveries depending on which facts the jury ultimately believed." J. Mot. 14. Accordingly, Plaintiffs could have recovered significantly more at trial or significantly less. The unpredictability of the outcome at trial makes settlement an ideal option for both parties. Further, in light of that unpredictability, the fact Plaintiffs are recovering the amount of damages that they are indicates this is the better option for Plaintiffs.

### 5. (9) The Experience, Reputation and Ability of the Attorney

As detailed above, Plaintiffs' counsel has significant familiarity with wage and hour claims. In support of this claim, Plaintiffs have included declarations from the three (3) attorneys who worked on this case, one of whom has approximately nineteen (19) years of experience practicing law and included citations to several wage and hour cases he has worked on to date.

### 6. (12) Attorneys' Fees Awards in Similar Cases

Plaintiffs' request for reimbursement of $55,000.00 in attorney's fees approximately forty percent (40%) of the total damages Plaintiffs will be collectively receiving. Counsel has not provided any examples of attorneys' fees awards in similar cases, but a review of a few cases reveals this is a reasonable amount to recover considering the number of Plaintiffs, the

---

[6] Two plaintiffs are receiving slight different amounts than what they sought. Specifically, Plaintiff Fuentes is recovering $231.68 less than he claimed he was owed. J. Mot. 5, 9. While this amount of money might not be negligible to Plaintiff Fuentes, there is no indication that he was not sufficiently informed or otherwise prejudiced during these proceedings. Additionally, Plaintiff Dominguez is receiving approximately three (3) times the amount he was owed as estimated using Plaintiffs' records. However, the Joint Motion states that "[Mr.] Dominguez was the catalyst for the initiation of this collective action, and he assisted in identifying potential workers to participate in the case." J. Mot. 8.

complexity of the issues at hand and the procedural posture of the matter. *See, e.g.*, *Navarro v. Eternal Trendz Customs, LLC*, Civ. A. No. TDC-14-2876, 2015 WL 898196 (D. Md. Mar. 2, 2015) (approving a settlement which included attorneys' fees and costs amounting to $3,545.20 where plaintiffs were awarded $4,291.49 and $1,298.89 in wages and liquidated damages); *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404 (D. Md. 2014) (Grimm, J.) (approving a settlement that was agreed to after informal discovery and ADR and that included $3,000 in attorneys' fees and costs where plaintiff was awarded $4,500 in wages and liquidated damages); *Almendarez v. J.T.T. Enterprises Corp.*, Civ. No. JKS-06-68, 2010 WL 3385362 (D. Md. Aug. 25, 2010) (granting attorneys' fees 25 times the total amount eight plaintiffs recovered after trial). Accordingly, the Court finds the ratio between what Plaintiffs will recover and what Plaintiffs' counsel will be reimbursed is in line with other similar cases.

## II. Conclusion

Based on the foregoing, the Court hereby **GRANTS** the parties' Joint Motion without modification as: (1) there exists a *bona fide* dispute; (2) the settlement agreement is both fair and reasonable under the *Saman* test; and, (3) the attorneys' fees agreed to appear to be not only reasonable under *Saman* but also represent a significant reduction from what Plaintiffs' counsel incurred while prosecuting this case. In making this decision, the Court offers no opinion on the merits of Plaintiff's underlying claims or Defendants' raised defenses.

February 4, 2019                                                                /s/

                                                              Charles B. Day
                                                              United States Magistrate Judge

CBD/clc